# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**BARBARA BARKLEY, NANCY C. HALLER,**
**CRYSTAL DAWN HANNAH, PAUL PHILLIPS,**
**JAMES SCHROCK, MARY JANE SKIDMORE,**
**and MARY DIANE SMITH**

        **Plaintiffs,**

*vs*.                                  **CIVIL ACTION NO. 2:07CV13**

**KMART CORPORATION and**
**MELINDA HART,**

        **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

Seven former full-time hourly employees of the Elkins, West Virginia, Kmart store instituted this civil action in State court claiming age discrimination in violation of the West Virginia Human Rights Act and violation of the West Virginia Wage Payment and Collection Act when they were terminated from employment. Defendant removed the case to this Court. The matter is pending on Plaintiffs' motion to remand the case to State court.

<u>Relevant Procedural History</u>

On the 6th day of March, 2007, this case was referred to the undersigned by the District Judge [Docket Entry 25]. On the 8th day of March, 2007, Plaintiffs filed their Motion to Remand [Docket Entry 26]. Defendants filed their Response In Opposition To Plaintiffs' Motion To Remand on March 23, 2007 [Docket Entry 28]. Plaintiffs filed their Reply In Support Of Motion To Remand on April 2, 2007 [Docket Entry 30]. The parties appeared for hearing before the Court on April 10, 2007. Neither party elected to offer any testimony or evidence. Instead, they each elected to rely on their briefings and citations to discovery and expert reports noted within or

attached to their briefings. Pursuant to the Court's request, the parties submitted a "Joint Appendix" in electronic format, which was filed under seal but reviewed by the Court during the preparation of this Opinion/Report and Recommendation.

## Relevant Undisputed Facts

1) Each of the Plaintiffs is a former employee of Kmart working out of its Randolph County, West Virginia, Store.

2) Kmart is a Michigan corporation.

3) Kmart is licensed and authorized to do business in West Virginia.

4) Melinda Hart was store coach of the Randolph County, West Virginia, Kmart store.

5) Melinda Hart is a resident of Randolph County, West Virginia.

6) Plaintiffs were terminated from employment with Kmart on January 4, 2006.

## Contentions of the Parties

**Plaintiff**

 1) The decisions to terminate Plaintiffs' employment were made exclusively at the store level by store coach Melinda Hart.

 2) Defendant, Melinda Hart, "[a]s Store Coach, . . . was responsible for implementing Kmart's January 4, 2006, workforce reduction in the Elkins store."

 3) Plaintiffs' statistical evidence supports a conclusion that Kmart's workforce reduction plan as implemented by Defendant, Melinda Hart, discriminated against persons forty (40) years of age or older in violation of law.

 4) Defendant, Melinda Hart, treated one younger employee and one older employee disparately when applying their respective performance scores to the Performance

2

Recap portion of the Workforce Adjustment Guidelines.

5) Defendant, Melinda Hart, is a resident of West Virginia.

6) Defendant, Kmart, is a Michigan corporation authorized to do business in West Virginia and is engaged in trade or commerce in Randolph County, West Virginia.

7) Complete diversity exists.

8) Defendants' removal of the action was for the primary purpose of delaying trial of the matter scheduled to commence in Randolph County Circuit Court on April 3, 2007.

9) Plaintiffs are entitled to seek recovery for unlawful discrimination on the disparate treatment analysis or the disparate impact analysis.

**Defendant**

(A) Kmart developed detailed Workforce Adjustment Guidelines to be used during a nationwide workforce adjustment program.

(B) Kmart's detailed Workforce Adjustment Guidelines were designed and implemented "to ensure that the workforce adjustment program was carried out in a neutral, nondiscriminatory manner and to ensure that the highest performing employees in each store were retained." [Docket Entry 28, p. 2-3].

(C) Full time store coaches were to use the Workforce Adjustment Guidelines and Associate Performance Recap forms to rank the employees in their stores to determine "which full-associates would be retained following the workforce adjustment." [Docket Entry 28, p. 3].

(D) Defendant, Melinda Hart, "was tasked with the responsibility of implementing the

WFAGs and ranking the full-time hourly associates at the Elkins Store."

(E) "Hart followed the WFAGs and utilized the Performance Recap to score all full-time associates, on the four performance indicators, and as required by the WFAGs; she also included a converted score from the associates' most recent performance appraisals." [Docket Entry 28, p. 3].

(F) "Hart ranked the associates based on their total average score." [Docket Entry 28, p. 3].

(G) "The seven Plaintiffs fell within the eleven lowest ranked associates and, per company direction, were terminated as part of the workforce adjustment." [Docket Entry 28, p. 3].

(H) Plaintiffs' joinder of Hart was for the sole purpose of destroying federal diversity jurisdiction and therefor fraudulent.[1]

(I) With respect to Defendant Hart, Plaintiffs cannot satisfy their burden of proof "that, but for their protected status, the adverse employment decisions would not have been made." [Docket Entry 28, p. 8].

(J) Defendants timely removed the within civil action.

### Discussion

**Law**

28 U.S.C. §1332(a) provides in pertinent part: "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000,

---

[1] Plaintiff Skidmore stated that to her knowledge, Melinda Hart was joined as a Defendant "to keep our case in Randolph County." [Docket Entry 28, p. 6].

exclusive of interest and costs, and is between -- (1) citizens of different States."

The requirement that the controversy be between citizens of different states requires complete diversity between the Plaintiffs and the Defendants. "To sustain diversity jurisdiction there must exist an 'actual,' 'substantial' controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side." City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69, 62 S.Ct. 15, 86 L.Ed. 47 (1941)(internal citations omitted).

There is no question that all of the Plaintiffs in the instant case are West Virginia residents. There is also no question that one of the two original Defendants, namely Melinda Hart, is also a resident of West Virginia. Accordingly, in the absence of complete diversity and without more, filing of Plaintiffs' action in the State court was appropriate.

Pursuant to 28 U.S.C. §1441(a), "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the Defendant or the Defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

Following extensive discovery in the State court, Defendants removed the subject action from the State court to this Federal Court under the doctrine of fraudulent joinder claiming that Melinda Hart was joined as a "Sham" Defendant in the original action. "The plaintiff is not permitted to join a Defendant simply for the purpose of defeating federal diversity jurisdiction." Degenova v. PPG Industries, Inc., 2006 WL 3692645 (N.D.W.Va.) citing Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999).

To prove a nondiverse Defendant was fraudulently joined in order to defeat removal, the

removing party must establish either: (1) "outright fraud in the plaintiff's pleading of jurisdictional facts" or (2) that "there is no possibility that plaintiff would be able to establish a cause of action against the in-state Defendant in state court." *Id.* (quoting Marshall v. Manville Sales Corp., 6 F.3d at 229, 232 (4th Cir. 1993)).

The burden of proof is significant and is "more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." Hartley v. CSX Transp., *supra*. "In order to prove fraudulent joinder, it must be shown that 'the plaintiff cannot establish a claim against the nondiverse Defendant even after resolving all issues of fact and law in the plaintiff's favor." Degenova v. PPG Industries, Inc., 2006 WL 3692645 (N.D.W.Va.) (citing Hartley v. CSX Transp., Inc., 187 F.3d 422, 232-233)(internal citations omitted). It is not necessary that Plaintiff's claim against the nondiverse Defendant be ultimately successful in order to defeat removal. It need only assert "a possibility of a right to relief." Marshall v. Manville Sales Corp., 6 F.3d at 229, 232-233 (4th Cir. 1993).

Pursuant to 28 U.S.C. §1447(c), "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case."

**Outright Fraud**

In their complaint Plaintiffs, Barbara Barkley, Nancy E. Haller, Paula Phillips, James

6

Schrock, Mary Jane Skidmore, and Mary Diane Smith[2] individually allege:

    Disparate Treatment

    (A)    "In December 2005 or January 2006, the Defendants – individually, jointly, and/or aiding and abetting each other– made an adverse employment decision . . . ."

    (B)    "The age of . . . was a motivating factor in the Defendants' decision to take an adverse action against . . . ."  And

    Disparate Impact

    (A)    "Defendants' adverse employment decision regarding . . . was part of a larger practice by Defendants."

    (B)    "Defendants' practice has a disproportionate adverse impact upon workers aged forty or more."

    (C)    "Such practice is not consistent with business necessity."

At the time of the filing of the state complaint and prior to discovery, Plaintiffs would have known that Hart was the Elkins Kmart store coach; she evaluated the employees; she applied the evaluations to the WFAGs; and she discharged the Plaintiffs from their employment with Kmart.

Given:  1) allegations in the complaint of disparate treatment and disparate impact against both Kmart and Hart; 2) the undisputed fact that it was Hart who did the evaluations and selected the employees who would not be retained as full time hourly employees at the Elkins store after the planned reduction in force was completed; 3) and that it was Hart who actually discharged those full time hourly employees she had selected for non-retention,  Defendants have failed to carry their

---

[2]Crystal Dawn Hannah alleges Defendants engaged in an unspecified discriminatory practice which resulted in their adverse employment decision.  She does not allege the discriminatory practice was age discrimination.

considerable burden to establish "outright fraud in the plaintiff's pleading of jurisdictional facts." Marshall v. Manville Sales Corp., *supra* at 232.

**No Possibility of Establishing a Cause of Action Against In-State Defendant in State Court**

From information gathered from Kmart through production requests, Plaintiffs' expert witness is now prepared to opine that using the Kmart selection for non-retention process applied by Hart at the Elkins store resulted in the age forty (40) and older termination rate being more than three (3) times higher than the termination rate of those under the age of forty (40) for West Virginia Kmart store employees.

Plaintiffs also assert that Hart, in the evaluation process, intentionally down graded one older (over forty (40)) worker's score and upgraded one under forty (40) worker's score in order to give the younger worker the chance to remain employed and in combination or conspiracy with others, treated younger employees differently than some older employees in the termination process.[3]

---

[3]Skidmore testified: Q. But as far as the individuals that remain, the full-time associates that remain, do you feel like you personally are better suited to fill the remaining positions than they are?
A. Yes.
Q. Why do you feel that?
A. Well, because there's people there who don't do their jobs, and they will tell you they don't do their jobs.
Q. Who are these people?
A. Melinda Phillips. She tells everybody you know, "I don't have to work. I don't do freight," you know? And she's allowed this. It's like she's, you know, treated - - she was treated differently than anyone else in the store was treated.
Q. Who treated her differently?
A. Melinda Hart.
(Skidmore Deposition, p. 81-84)

Haller testified: Q. If you had to rank the people, and you were forced to rank them in order of performance, would you have done it differently than she [Hart] did?
A. I - - I believe I would have.

While the witnesses generally were equivocal as to whether the reason for the different treatment was age discrimination or because Hart liked and took care of some employees who were her friends, Phillips was not. She explained that she believed Hart terminated her because of her age.

Under the West Virginia Human Rights Act, W.Va.Code, 5-11-9 [1992] *et seq,* it is "an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, . . . (1)

---

|   |   |
|---|---|
|  | Q. Who would you have retained?<br>A. I wouldn't have got myself into a lawsuit by laying all the old ones off and keeping some of the younger ones with the - - that didn't make as much money.<br>(Haller Deposition, p. 41-44) |
| Smith testified: | Q. Okay. I need you to explain that [why Smith had testified she felt Hart lack experience and judgment in personnel decisions] a little more to me.<br>A. If someone - - If a position needed filled, it was usually filled - - I guess the way - - with who her friends were at the time.<br>Q. So do you feel like she played favorites?<br>A. Yes.<br>Q. Who would you consider her favorites to be?<br>A. Brenda Ice; Linda Hedrick; Cheryl Leary; Melinda Phillips; Donna Coleman . . . Glenn Zycafoose; Terry Bright.<br>(Smith Deposition, p. 33-40) |
| Phillips testified: | Q. Do you feel like she discriminated against you based on age at any time?<br>A. Yes.<br>Q. Would you tell me when?<br>A. She had kept people that were younger that didn't do their work as well as I did.<br>Q. You're talking in terms of your actual termination?<br>A. Yes.<br>Q. Okay. And why do you feel that way?<br>A. Because of the younger ones she had kept that didn't do their work as well as I did.<br>(Phillips Deposition, p. 25-36, 41-52 and 101-103) |

[f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions, or privileges of employment if the individual is able and competent to perform the services required even if such individual is blind or handicapped. . . ." "The term 'discriminate' or 'discrimination' means to exclude from, or fail or refuse to extend to, a person equal opportunities because of race, religion, color, national origin, ancestry, age, blindness, handicap, or familial status and includes to separate or segregate[.]" W.Va.Code, 5-11-3(h) [1994]. "The term 'age' means the age forty or above[.]" W.Va.Code, 5-11-3(k) [1994].

West Virginia recognizes both disparate treatment and disparate impact with respect to age discrimination claims within the State's Human Rights Act. "Disparate treatment is applicable to claims of intentional discrimination, as opposed to claims that a facially neutral practice is having disparate impact upon a protected class." West Virginia University / West Virginia Board of Regents v. Decker, 191 W.Va. 567, 571, 447 S.E.2d 259, 263 (1994). Disparate treatment cases follow the test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie case of age discrimination under a disparate treatment theory, Plaintiff must show that (1) he belongs to a protected class; (2) the employer made an adverse decision concerning the Plaintiff; and (3) but for the Plaintiff's protected status, the adverse decision would not have been made. Conaway v. Eastern Associated Coal Corp., 178 W.V. 164, 358 S.E.2d 423 (1986). Once the prima facie case is established, the burden shifts to the employer to establish that it had a "legitimate, nondiscriminatory reason" for its actions. If the employer offers such a nondiscriminatory reason, the burden again shifts to the Plaintiff to persuade the trier of fact that "a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Texas Dept. of

Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.E.2d 207 (1981).

The "[d]isparate impact theory does not require proof of discriminatory motive. Unlike disparate treatment analysis, which turns on *illegal motive*, disparate impact turns on discriminatory *effect*. To prevail under disparate impact, the plaintiff must show that the Defendant's facially neutral policy has a disproportionate adverse impact on the basis of the protected trait." West Virginia University / West Virginia Board of Regents v. Decker, *supra* at 264, 572 citing Guyan Valley Hospital, Inc. v. West Virginia Human Rights Comm'n, 181 W.Va. 251, 253, n. 4, 382 S.E.2d 88, 90 (1989) [emphasis added by the Court]. The West Virginia Supreme Court of Appeals adopted the disparate impact theory of recovery under the West Virginia Human Rights Act in Guyan. In Decker, the Court held "that there is a cause of action of 'disparate impact' that applies equally to all claims arising under W.Va.Code, 5-11-1 [1967] *et seq*., including age-based discrimination." West Virginia University / West Virginia Board of Regents v. Decker, *supra* at 265, 573. The Court also announced the applicable test: "In proving a prima facie case of disparate impact under the Human Rights Act, the plaintiff bears the burden of (1) demonstrating that the employer uses a particular employment practice or policy and (2) establishing that it causes a disparate impact on a class protected by the statute." West Virginia University / West Virginia Board of Regents v. Decker, *supra* at 266, 574. The burden then shifts to the employer to prove "that the practice is job related and is consistent with business necessity. If the employer is able to do that, then the burden shifts to the plaintiff to show a less burdensome alternative practice exists which the employer refuses to adopt." *Id.* [internal citations omitted].

Recognizing that disparate impact cases involving age discrimination are ordinarily proved by statistics and that Plaintiffs' expert is prepared to offer statistical evidence to show that the

11

process selected by Kmart and used by Hart in terminating full-time hourly employees at the Elkins, West Virginia, store disparately impacted a class of older workers who were within the class protected by the West Virginia Human Rights Act, it cannot be said at this stage of the litigation that "there is no possibility that plaintiff would be able to establish a cause of action against the in-state Defendant in state court." Marshall v. Manville Sales Corp., *supra* at 232. If that were not sufficient, with respect to the disparate treatment claims made by the Plaintiffs, while Defendants have argued significant weaknesses in some of those claims as to Defendant Hart, the Defendants' arguments had not convinced the Court that there are no viable claims, particularly with respect to Plaintiff Phillips. Furthermore, Defendants have failed to carry their significant burden to establish that, with respect to the disparate treatment claims of the Plaintiffs, "there is **no possibility** that plaintiff [s] would be able to establish a cause of action against the in-state Defendant in state court." *Id.* [emphasis added by the Court].

In the absence of any outright fraud in the joinder of Hart and in the absence of Defendants carrying their substantial burden of proof that there is **no possibility** that Plaintiff s would be able to establish a cause of action based on either disparate treatment or disparate impact against the in-state Defendant in State court, remand to State court is appropriate.

**Improper Removal**

Plaintiffs contend Defendants' motive for removal was delay and that Plaintiffs should be awarded attorneys fees and costs incurred in connection with their Motion to Remand.

The State court action was originally filed in the Circuit Court of Randolph County, West Virginia, on March 23, 2006. Defendants' Notice of Removal was filed February 6, 2007. 28 U.S.C. §1446(b) provides: ". . . that a case may not be removed on the basis of jurisdiction conferred

12

by section 1332 of this title more than 1 year after commencement of the action." Defendants' removal did not violate the one-year limitation.

28 U.S.C. §1446(b) further provides: "If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the Defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, . . . ."

The initial complaint asserts claims of disparate treatment and disparate impact against the diverse foreign Defendant, Kmart, and the non-diverse Defendant, Hart. Based on the complaint, there was no basis to file a notice of removal.

During an early deposition taken under the State court scheduling order, Plaintiff, Mary Jane Skidmore, in response to questions propounded by Defendants' counsel, testified that to her knowledge, Melinda Hart was joined as a Defendant "to keep our case in Randolph County." Such a statement is prima facie evidence of joinder for the sole purpose of defeating diversity jurisdiction. Other Plaintiffs were deposed, but none of them offered testimony that Hart was joined to defeat diversity jurisdiction.

Since removal occurred at the close of State discovery and in the face of a State court trial date of April 3, 2007, Plaintiffs contend Defendants' motive for removal was delay and seek financial sanctions in the form of attorneys fees and costs incident to their having to fight removal and seek remand. While the timing of removal gives the appearance of impropriety, such an appearance is overcome by the fact that Defendants waited to file the motion to remove until the depositions of Plaintiffs had been completed in order to assure themselves that there were no factual claims against Defendant Hart which on their face would defeat removal. There is no evidence to

by section 1332 of this title more than 1 year after commencement of the action." Defendants' removal did not violate the one-year limitation.

28 U.S.C. §1446(b) further provides: "If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the Defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, . . . ."

The initial complaint asserts claims of disparate treatment and disparate impact against the diverse foreign Defendant, Kmart, and the non-diverse Defendant, Hart. Based on the complaint, there was no basis to file a notice of removal.

During an early deposition taken under the State court scheduling order, Plaintiff, Mary Jane Skidmore, in response to questions propounded by Defendants' counsel, testified that to her knowledge, Melinda Hart was joined as a Defendant "to keep our case in Randolph County." Such a statement is prima facie evidence of joinder for the sole purpose of defeating diversity jurisdiction. Other Plaintiffs were deposed, but none of them offered testimony that Hart was joined to defeat diversity jurisdiction.

Since removal occurred at the close of State discovery and in the face of a State court trial date of April 3, 2007, Plaintiffs contend Defendants' motive for removal was delay and seek financial sanctions in the form of attorneys fees and costs incident to their having to fight removal and seek remand. While the timing of removal gives the appearance of impropriety, such an appearance is overcome by the fact that Defendants waited to file the motion to remove until the depositions of Plaintiffs had been completed in order to assure themselves that there were no factual claims against Defendant Hart which on their face would defeat removal. There is no evidence to

suggest that Defendants waiting until discovery had been completed to file for removal violated 28 U.S.C. §1446(b). Plaintiffs are, therefore, not entitled to costs and fees under 28 U.S.C. §1447(c).

### Recommendation

In accord with the foregoing, it is my recommendation that Plaintiffs' Motion to Remand [Docket Entry 26] be **GRANTED** and that Plaintiffs' motion for fees and costs pursuant to 28 U.S.C. §1447(c) be **DENIED**.

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, Chief United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk is directed to provide a copy of this Order to counsel of record.

DATED: April 18, 2007

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE